IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 2:22cr147 |
| v. | ) | |
| | ) | |
| CORTNEY ALLEN CONLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**GOVERNMENT'S TRIAL MEMORANDUM**

The United States of America, by and through its attorneys, Jessica D. Aber, United States

Attorney, and Megan M. Montoya, Assistant United States Attorney, hereby respectfully submits

its trial brief in the above-captioned case.

**I.      CHARGES IN THE INDICTMENT**

The Superseding Indictment, returned April 19, 2023, charges defendants with 14 counts

related to their participation in a Continuing Criminal Enterprise ("CCE"), the Conley DTO, led

by Defendant Cortney Allen Conley ("C. Conley"). The Conley DTO trafficked marijuana and

psilocybin from approximately January 2020 through November 8, 2022. Count One charges

defendants C. Conley, Javaid Akhtar Reed ("Reed"), Kyron Speller ("Speller"), and Terrance

Spencer Alexander ("Alexander") with conspiring to distribute and possess with the intent to

distribute 100 kilograms or more of marijuana and a detectable amount of psilocybin, in

violation of 21 U.S.C §§ 841 and 846.  The Second Superseding Indictment also charges, as

substantive crimes, eight individual drug offenses committed by defendants as the worked for the

Conley DTO, in violation of 21 U.S.C § 841 (Counts Two, Three, Six, Seven, Ten, Eleven,

Thirteen, and Fourteen). Defendant C. Conley is charged with being an organizer, supervisor or

any position of management with at least five or more other persons in a Continuing Criminal

Enterprise, in violation of 21 U.S.C § 848 (Count Nine). Each of the defendants is also charged

with possession of a firearm in connection with a drug trafficking offense, in violation of § 924(c) (Counts Four and Eight- Defendant C. Conley; Count Twelve- Defendants Reed and Alexander; and Count Fifteen- Defendant Speller).

## II.     STATUTES AND ELEMENTS

Count One of the Superseding Indictment charges that from no later than January 2020 and continuing up to and including November 8, 2022, in Chesapeake, Virginia, within the Eastern District of Virginia and elsewhere, CORTNEY ALLEN CONLEY, a/k/a "KO," JAVAID AKHTAR REED, a/k/a "Vay," KYRON SPELLER, a/k/a "Spazz" and TERRANCE SPENCER ALEXANDER, a/k/a "T-Money," the defendants herein, did knowingly and intentionally combine, conspire, confederate, and agree with each other and with other persons, both known and unknown to the Grand Jury, to knowingly and intentionally:

(1) distribute and possess with the intent to distribute 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(vii); and

(2) distribute and possess with the intent to distribute a mixture and substance containing a detectable amount of psilocybin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), and 841(b)(1)(C).

All in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1).

To prove conspiracy to possess [marijuana and psilocybin] with intent to distribute, the Government must establish that: (1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy. *United States v. Burgos,* 94 F.3d 849 (4th Cir.1996), *cert. denied,* 519 U.S. 1151, 117 S.Ct. 1087, 137 L.Ed.2d 221 (1997).

In *United States v. Laughman,* 618 F.2d 1067, 1074 (4th Cir.), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980), we explained that the "gravamen of the crime of conspiracy is an *agreement* to effectuate a criminal act." By its very nature, a conspiracy is clandestine and covert, thereby frequently resulting in little direct evidence of such an agreement. *See Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256–57, 92 L.Ed. 154 (1947); *United States v. Wilson,* 721 F.2d 967, 973 (4th Cir.1983). Hence, a conspiracy generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced. *See Iannelli v. United States,* 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 1289 n. 10, 43 L.Ed.2d 616 (1975); *United States v. Dozie,* 27 F.3d 95, 97 (4th Cir.1994) (per curiam); *United States v. Andrews, \*858* 953 F.2d 1312, 1318 (11th Cir.), *cert. denied,* 505 U.S. 1210, 112 S.Ct. 3007, 3008, 120 L.Ed.2d 882 (1992). Indeed, a conspiracy may be proved wholly by circumstantial evidence. *See Iannelli,* 420 U.S. at 777 n. 10, 95 S.Ct. at 1289 n. 10; *United States v. Durrive,* 902 F.2d 1221, 1229 (7th Cir.1990); *Laughman,* 618 F.2d at 1074. Circumstantial evidence tending to prove a conspiracy may consist of a defendant's "relationship with other members of the conspiracy, the length of this association, [the defendant's] attitude [and] conduct, and the nature of the conspiracy." *Collazo,* 732 F.2d at 1205. A conspiracy, therefore, "may be inferred from a 'development and collocation of circumstances'." *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942) (quoting *United States v. Manton,* 107 F.2d 834, 839 (2d Cir.1939), *cert. denied,* 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1940)). Proof of an overt act in furtherance of the conspiracy is not required to sustain a drug conspiracy conviction. *United States v. Shabani*, 513 U.S. 10, 17 (1994).

Counts Two, Three, Six, Seven, Ten, Eleven, Thirteen, and Fourteen charge various defendants with Possession with the Intent to Distribute Marijuana or Psilocybin, in violation of 21 U.S.C. § 841(a)(1).

Section 841(a)(1) of Title 21 of the United States Code provides, in part, that:

(a) . . . It shall be unlawful for any person knowingly or intentionally –

(1)  to . . . possess with intent to . . . distribute . . . a controlled

substance . . .

The elements necessary to prove a conviction for possession with intent to distribute are: (1) possession of the cocaine base; (2) knowledge of this possession; and (3) intention to distribute the cocaine base. *See United States v. Nelson,* 6 F.3d 1049, 1053 (4th Cir.1993), *cert. denied,* 511 U.S. 1131, 114 S.Ct. 2142, 128 L.Ed.2d 870 (1994). Possession may be "actual or constructive, and it may be sole or joint." *Id.* Thus, "[p]ossession need not be exclusive, but may be shared with others." *Laughman,* 618 F.2d at 1077 (alteration in original) (internal quotation marks omitted). Constructive possession may be proved by demonstrating "that the defendant exercised, or had the power to exercise, dominion and control over the item." *United States v. Rusher,* 966 F.2d 868, 878 (4th Cir.), *cert. denied,* 506 U.S. 926, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992). Like conspiracy, "[c]onstructive possession may be established by either circumstantial or direct evidence." *Nelson,* 6 F.3d at 1053. The requisite intent to distribute may be inferred if the quantity of drugs is greater than would be used for personal consumption. *See Roberts,* 881 F.2d at 99. Multiple persons possessing a large quantity of drugs and working in concert sufficiently establish constructive possession. *See United States v. Watkins,* 662 F.2d 1090, 1097–98 (4th Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1613, 71 L.Ed.2d 849 (1982).

The defendants are also charged with knowingly using and carrying a firearm during and in relation to, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts Four and Eight- Defendant C. Conley; Count Twelve- Defendants Reed and Alexander; and Count Fifteen- Defendant Speller). This statute provides whoever

"during and in relation to any… drug trafficking crime… uses or carries a firearm, or … in furtherance of any such crime, possesses a firearm" has committed an additional crime. "In order to prove a violation of § 924(c)(1) [under the "uses or carries" prong], the Government must establish two elements: "(1) the defendant used or carried a firearm, and (2) the defendant did so during and in relation to a drug trafficking offense or crime of violence." *United States v. Mitchell,* 104 F.3d 649, 652 (4th Cir.1997); *United States v. Jeffers,* 570 F.3d 557, 565 (4th Cir.2009). A firearm is carried "in relation to" a drug trafficking offense if it has "some purpose or effect with respect to the drug trafficking crime" and if its presence was not "the result of accident or coincidence." *Smith,* 508 U.S. at 238, 113 S.Ct. at 2059. The firearm must facilitate, or potentially facilitate, the drug trafficking offense. *Id.* For example, if a firearm is carried for protection or intimidation, it is carried "in relation to" the drug trafficking offense within the meaning of § 924(c)(1). *See United States v. Stockstill,* 26 F.3d 492, 496 (4th Cir.), *cert. denied,* 513 U.S. 941, 115 S.Ct. 345, 130 L.Ed.2d 302 (1994).

In order to prove the § 924(c) violation predicated on possession of a firearm in furtherance of a drug trafficking crime, the government is required "to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime. However, whether the firearm served such a purpose is ultimately a factual question." *See United States v. Lomax,* 293 F.3d 701, 705 (4th Cir.2002). Factors that the jury may consider include: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* (internal quotation marks omitted).

Count Nine charges Defendant Conley with Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(c), which provides:

"(c) 'Continuing criminal enterprise' defined
"For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—
"(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
"(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—
"(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
"(B) from which such person obtains substantial income or resources."

21 U.S.C. § 848(c).

To sustain a conviction for engaging in a CCE, the Government must prove the following five elements: (1) the defendant committed a felony violation of the federal drug laws; (2) such violation was part of a continuing series of violations of the drug laws; (3) the series of violations were undertaken by defendant in concert with five or more persons; (4) the defendant served as an organizer or supervisor, or in another management capacity with respect to these other persons; and (5) the defendant derived substantial income or resources from the continuing series of violations. 21 U.S.C.A. § 848(c); *United States v. Ricks,* 882 F.2d 885, 890–91 (4th Cir.1989).

"The requirement that the conduct must take place as a part of a continuing series of violations has been held to require proof of three or more related violations, *United States v. Young,* 745 F.2d 733, 747 (2d Cir. 1984), *cert. denied,* 407 U.S. 1084 (1985), but this does not require proof of a large drug trafficking operation. It is the continuing series of violations, and not the overall size of the operation, that must be proved as a second element." *United States v. Tanner,* 917 F.2d 1302 (4th Cir. 1990). "It is well established that "series" means three or more violations." *United States v. Ricks*, 882 F.2d 885, 891 n. 5 (4th Cir. 1989). The Supreme Court has held that "a jury has to agree unanimously about which specific violations make up the continuing series." *Richardson v. United States*, 526 U.S. 813, 819 (1999). Thus, following *Richardson*, the trial court must instruct, and the jury unanimously agree, on which

predicate offenses constitute the "continuing series of violations" under the statute. *Id*. at 823.

Courts give CCE's management requirement a "common-sense reading," bearing in mind that the statute "is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Garrett v. United States,* 471 U.S. 773, 781, 105 S.Ct. 2407, 2413, 85 L.Ed.2d 764 (1985). "[A] defendant need not fit the label of 'kingpin' or 'ringleader' to be convicted under § 848. Moreover, a CCE may have more than one head." *United States v. Johnson*, 54 F.3d 1150, 1155 (4th Cir. 1995). In proving the "organizer or supervisor" element, the government is not required to prove that the five individuals were supervised at the same time, nor must the five individuals be under the direct or immediate control of the defendant. *Ricks*, 882 F.2d at 891. Nor must the government "show that the defendant had personal contact with the five persons because organizational authority and responsibility may be delegated." *United States v. Heater*, 63 F.3d 311, 317 (4th Cir. 1989) (internal quotation omitted). The trial court is not required to instruct, nor must the jury unanimously agree, on which five persons were supervised, organized, or managed. *United States v. Hall*, 93 F.3d 126, 129-30.

The statute does not define "substantial income or resources." The Fourth Circuit has previously found tens of thousands of dollars to be sufficient to support a CCE conviction. *United States v. Webster*, 639 F.2d 174, 182 (4th Cir. 1981) (holding that "given the quantity of drugs which were shown to have been moving in and out of Webster's possession, the jury would have been justified in concluding that he had received tens of thousands or even hundreds of thousands of dollars from his drug business. The evidence was thus more than sufficient for conviction."); *See also United States v. Wilson*, 135 F.3d 291, 303 (4th Cir. 1998) ("Norman Wilson also claims a failure of proof on the fifth CCE element, contending there was no evidence that he received substantial income or resources from a series of drug trafficking violations. In essence, Norman Wilson claims that he earned no more than street level sellers.

Perkins, however, testified that he and Norman Wilson could make $60,000 to $70,000 profit on each kilogram of powder cocaine they bought. For a time Thornton supplied the organization with at least one kilogram a week. This is sufficient to prove that Norman Wilson derived substantial income from a series of drug trafficking violations.").

### III.    <u>SUMMARY OF THE CASE</u>

Trial in this matter is scheduled to begin on September 19, 2023.  At trial, the government plans to call numerous witnesses who will establish the CCE, led by Defendant C. Conley.  The government will offer witness testimony, video evidence of Defendant C. Conley executing two attempted robbers while C. Conley violently defended the Wintercress "popup" shop, marijuana and psilocybin recovered from searches of "popup" shops, documents, firearms and other physical evidence recovered during searches of coconspirators' residences, electronic evidence recovered from forensic extractions of coconspirators' electronic devices, banking records establishing that defendant C. Conley derived substantial income and resources from the CCE,  and defendants' own statements to establish each defendant's role within the enterprise, as well as his or her participation in marijuana and psilocybin conspiracy.

The evidence will establish that this CCE first came to the attention of law enforcement on May 13, 2022, when C. Conley and Rashaun Johnson engaged in an approximately thirty second shootout at a Wintercress "popup" shop and killed two attempted robbers. During the conspiracy, the defendants and co-conspirators established makeshift "popup" marijuana and psilocybin dispensaries at various locations throughout Hampton Roads, including at an apartment on Wintercress Way in Chesapeake, Virginia. The defendants and co-conspirators would change locations of the "popup" dispensaries to avoid detection by law enforcement and to avoid attempted robberies of drugs and drug proceeds. C. Conley" set up multiple Ring cameras as the Wintercress Way "popup" to monitor the "popup."

This investigation began on May 13, 2022, when C. Conley and Rashaun Johnson engaged in a shootout with two subjects who attempted to rob the conspiracy's "popup" shop at The Streets of Greenbrier, a luxury apartment complex on Wintercress Way in Chesapeake, Virginia.  The shootout occurred at approximately 3:50 p.m. on May 13, 2022.  Officers did not respond until later that day, after about 5:30 p.m., when a property manager of the apartment complex noticed bullet holes in the apartment complex hallway and called 911.

Patrol officers responded and attempted to gain entry to the front door after being provided a key by management. The key provided by management did not work because someone had changed the lock on the apartment door. The officers observed two decedents suffering from gunshot wounds through an open back window that had a screen that had been removed from the window. The officers made exigent entry into the apartment and determined that the two decedents had suffered from gunshot wounds. After the patrol officers determined that the two subjects were deceased, they exited the apartment and secured the scene. They also contacted homicide and robbery detectives, who obtained a state search warranted and reentered the apartment.

Chesapeake Police Department Homicide and Robbery detectives responded, including Detective Jason Lightfoot, who acted as the lead investigator on scene. Among the detectives assisting Detective Lightfoot was Chesapeake Detective and Federal Bureau of Investigation (FBI) Task Force Officer (TFO) William Rocca. The investigative team noted that the one-bedroom apartment was set up for the distribution of controlled substances and did not have a bed or bedding inside. Instead, the apartment contained folding tables displayed various strains of high-grade marijuana labeled by strain name and quantity pricing (multiple pounds); psilocybin (pounds); Xanax pills in jars; thousands of custom packaging materials; digital scale; edibles; and THC infused candy. The investigators also located a Square iPad credit card

scanner, a commercial money counter, multiple label makers, cash app handles with URL codes, a secure cash drop box, and a dry erase board listing the deal of the day.

TFO Rocca interviewed one of the individuals who was inside of the apartment during the shootout ("the witness"). After TFO Rocca interviewed the eyewitness, he submitted an emergency request form to Ring. Pursuant to this submission, Ring provided the investigative team with subscriber account information and an approximately two hour block of camera footage from four cameras depicting shortly before, during, and after the shooting. The account information listed "Allen Conley" as the subscriber, allenconley88@gmail.com as the email address and noted that the account was created on August 12, 2020. The account listed six cameras for the address on Wintercress Way in Chesapeake.

On May 14, 2022, the investigative team also submitted a preservation request for all the camera footage. On May 25, 2022, the investigative team submitted a state search warrant to Ring for the last 90 days of footage. That warrant was executed on May 26, 2022. However, although there was a preservation request as of May 14, 2022, Ring's records showed that all devices were removed from the account along with all the data on May 15, 2022, along with cancellation of the plan subscription. This meant that after Ring made the emergency production to the investigative team, someone accessed the Ring customer account and deleted additional video footage.

The investigators reviewed the video footage obtained from Ring, which depicts defendant Johnson acting as a doorman and controlling customer access to the apartment used to distribute controlled substances before the shooting and defendant Jenkins engaged in drug sales. The video footage also depicts the shootout. At the time of the shootout, five people were inside the apartment:  C. Conley, Johnson, Jenkins, and two other individuals. Two armed male subjects attempted to rob the "popup" shop. Consistent with his role as doorman, Johnson

10

checked the peephole and opened the door, and the two men burst into the apartment. Johnson and C. Conley then engaged in a gun battle and killed the two subjects. During the gun battle, more than 20 rounds are discharged in an approximate 30 second period. Bullets from the shootout entered another apartment across the hallway next to and into a child's play kitchen, striking to the right of the play stove door.  Fortunately, the resident of that apartment, an approximately 70-year-old grandmother, had taken her granddaughter to a horseback riding lesson and was not present during the shootout. Records and witness testimony will establish that Defendant Speller purchased and provided to Johnson the firearm used by Johnson during the shootout. One subject was shot in the spine and immobilized, and the other subject was shot so many times that the bones in his arms were shattered. Jenkins picked up one of the subject's unique teal firearm and pistol whipped the subject as he was on the floor dying. The Ring camera footage also depicts codefendant Jenkins returning to the scene of the shootout and removing the Ring camera from the front door of the apartment.

After the shootout, no one from inside the apartment attempted to render aid or call 911. Instead, C. Conley fled the crime scene through back windows, carrying drugs and money, while one of the attempted robbers cried out for help.  Evidence at trial will include videos, that despite these calls for help, of the defendant's customers continued to show up in an attempt to purchase illegal drugs and eventually some of them alerted other co-conspirators that something bad had happened to the "pop up" and a co-conspirator was dispatched to remove the exterior Ring camera from the outside of the apartment.  C. Conley then went on the run for months, changing his phone number on at least five occasions. Speller rented a vehicle and drove C. Conley to Atlanta after the shootout.

The investigators pursued leads developed from the Wintercress evidence which led to the execution of a series of search warrants at the coconspirators' addresses, at which the

11

investigative team seized evidence, including a substantial amount of marijuana and $15,000 in drug proceeds and interviewed witnesses. Despite the FBI and Chesapeake Police Department's rigorous investigation, C. Conley was able to move the "popup" shop location three more times before he was finally arrested after leaping from the second-floor window of the final "popup" located in Virginia Beach.  In his haste to escape, C. Conley left co-conspirator Bryant and Bryant's infant child behind to be arrested with more firearms, marijuana, and psilocybin.

The investigative team also learned of an attempted robbery at the Providence Road "popup" shop.  Through a search warrant, the investigative team recovered video footage of this prior attempted robbery, during which Reed brandished a firearm at an attempted robber, who fled from the scene. The video also depicts Reed bringing a drug customer into a room set up for drug distribution and being handed a firearm by a coconspirator. In approximately July 2021, an attempted robber, wearing a purple t-shirt and jeans, entered the Providence Road "pop up" shop brandishing a firearm. Alexander, who had a pistol in his waistband, engaged in a physical struggle with the attempted robber. Reed brandished a firearm at the attempted robber and stated "get the fuck out the crib."  The robber ultimately flees the scene.

The investigative team obtained Blink camera footage from the Newtown "popup" shop where C. Conley was arrested in November 2022.  The footage depicts Reed present with C. Conley while C. Conley was a fugitive in October 2022.  C. Conley was ultimately located and arrested on November 8, 2022, at a new "popup" shop in Virginia Beach, which was set up consistently with the Wintercress "popup" shop. At the time of his arrest, C. Conley jumped from a second story window and attempted to flee the scene.

The government will call law enforcement officers, a ballistics expert, a medical examiner, an expert in drug trafficking, cooperators, and eyewitnesses, to establish the different crimes in this case. The government will offer data obtained via search warrants of eleven

separate cellular telephones and one laptop computer, including C. Conley's final phone, which will detail co-conspirator statements made in furtherance of the CCE.  Topics will include choosing new locations for "popups," package deliveries of drugs and corresponding shipments of bulk cash to suppliers, and conversations concerning the arrest of co-conspirators and the possibility that those co-conspirators will talk to police. The evidence will include conversations with Reed where he is updating the telegram thread to advertise the drugs for the CCE, scouting new locations for "pop ups", and coordinating delivery of materials for the "pop ups". Conversations will also include both Speller and Alexander also talking about illegal drugs. Financial evidence will include summary charts of bank accounts maintained by C. Conley and his wife which will show approximately $500,000 of unexplained cash and electronic transfers of the life of the conspiracy, expensive trips to the West Coast to meeting with drug suppliers, and other costs associated with maintaining the CCE. Other financial evidence will include videos co-conspirators shot of the vacations C. Conley would take his employees to including two trips to high end beach houses in Sand Bridge Virginia and Tennessee. At one of these locations, C. Conley paid for a "customer appreciation" party to reward his higher end purchasers. The evidence will establish that Defendant C. Conley acted as an organizer, supervisor or manager of the CCE, and that the defendants committed these crimes as part of an ongoing marijuana and psilocybin conspiracy.

## IV.   GOVERNMENT'S METHOD OF SUBMITTING EVIDENCE IN ITS CASE AND LEGAL ISSUES

### A.  Stipulations

The United States has conferred with defense counsel and defense counsel graciously agreed to a series of stipulations relating to the authenticity of business records, including a 911 call, leasing records, Ring videos, certificates of analysis for seized quantities of marijuana and psilocybin, forensic extractions of electronic devices, a firearms transaction record, Blink video

files, mailing records, and financial records. These signed stipulations will be submitted by the date ordered by the Court.

### B. Evidence of C. Conley's Drug-Related Activities

The United States will seek to offer evidence that Defendant C. Conley engaged in drug trafficking crimes for years before the dates alleged in the Superseding Indictment with his codefendants and another witness. For example, Defendant C. Conley distributed marijuana to codefendant Rashaun Johnson when Rashaun Johnson was approximately 14 years old. Witness D.W. has known C. Conley for approximately nine years and started buying marijuana from him approximately eight years ago. Witness D.W. would meet C. Conley at different apartments to purchase the drugs, including one on Providence Road in Chesapeake and the one on Wintercress Road where he witnessed the shooting. Codefendant Jeron Cephus began purchasing personal use quantities of marijuana from C. Conley in approximately 2015 and observed him distribute marijuana to others.

The United States submits that such evidence is intrinsic to the offense. In *United States v. Kennedy*, 32 F.3d 876, 886 (4th Cir. 1994), the Fourth Circuit approved evidence of drug-related activity which involved uncharged individuals and took place a year before the charged conspiracy. The Court rejected defendant's argument that the testimony was prejudicial "other crimes" evidence governed by Federal Rules of Evidence 403 and 404(b). "Rather, evidence of uncharged conduct is not considered 'other crimes' evidence if it arose out of the same series of transactions as the charged offense, or if it is necessary to complete the story of the crime on trial." *Id*. at 886 (internal quotations and citations omitted). *Accord United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991) ("evidence of uncharged criminal activity admissible where it furnishes part of the context of the crime"; *United States v. Rawle*, 845 F.2d 1244, 1247 n.4 (4th Cir. 1988)

14

(same); and *United States v. Master*, 622 F.2d 83, 87 (4th Cir. 1980) (evidence of uncharged criminal conduct is admissible if it "served to complete the story of the crime on trial").

### C.  Evidence of Unexplained Wealth

The United States will seek to offer into evidence financial records described above which establish that C. Conley generated hundreds of thousands of dollars during the life of the CCE. The United States will also offer evidence that C. Conley was reportedly unemployed during this time period and collected unemployment benefits. "[E]vidence of unexplained wealth is relevant in narcotics prosecution as evidence of illegal dealings and ill-gotten gains." *United States v. Grandison,* 783 F.2d 21152, 1156 (4th Cir. 1986). *Accord United States v. Under Seal*, 42 F.3d 876, 878 (4th Cir. 1995); *United States v. McMillon,* 14 F.3d 948, 955 (4th Cir. 1994); and *United States v McMillion*, 14 f.3d 948, 955 (4th Cir. 1994). To prove the CCE, the government is required to put on evidence of "substantial" resources as one of the elements of the crime.

### D.  Proof of Controlled Substances

The United States will seek to prove the controlled substances at issue – marijuana and psilocybin – based on seizures from search warrants and from witness testimony regarding the historic drug trafficking of the CCE. Lay testimony and circumstantial evidence of the historic drugs may be sufficient, without an expert chemical analysis, to establish the identity of the controlled substance. *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976).

### E.  Summary Charts

The United States intends to offer summary charts of voluminous banking records and mail carrier records. Courts have approved and encouraged the use of summary charges where there are numerous documents or other items being summarized. *See* Fed. R. Evid. 1006; *United States v. Loayza*, 107 F.3d 257, 264 (4th Cir. 1997). Generally speaking, "[s]ummary charts are admissible if they aid the jury in ascertaining the truth. The complexity and length of the case as well as the

numbers of witnesses and exhibits are considered in making that determination." *Loayza*, 107 F.3d at 264, *citing United States v. Johnson*, 54 F.3d 1150, 1156 (4th Cir. 1995).

###    F.   Potential Claims of Self-Defense

Based on arguments made by defense counsel in pretrial motions and hearings, the United States will file a separate motion in limine seeking to preclude any defendant from arguing that the discharge of the firearms on May 13, 2022, the prior brandishing of a firearm during the Providence Road attempted robbery, or any defendant possessing a firearm during the life of the CCE, was an act of self-defense. Any such claim of self-defense is without merit. As a matter of law, "self-defense is irrelevant to a section 924(c) violation." *United States v. Poindexter,* 942 F.2d 354, 360 (6th Cir.), *cert. denied,* 502 U.S. 994, 112 S.Ct. 615, 116 L.Ed.2d 637 (1991); *accord United States v. Johnson,* 977 F.2d 1360, 1378 (10th Cir.1992) ( "[O]nce the association between the use of firearms and drug trafficking is shown, any additional finding that self-defense motivated use of the firearms is not relevant to a conviction under § 924.") (citation omitted), *cert. denied,* 506 U.S. 1070, 113 S.Ct. 1024, 122 L.Ed.2d 170 (1993); *see also United States v. Hill,* 971 F.2d 1461, 1484-85 (10th Cir.1992) (en banc) (Moore, J., dissenting) (stating that Congress in 1986 rejected an amendment to § 924(c) that would have allowed a drug-trafficking defendant to claim self-defense if he had used or carried a firearm because he feared being arrested "unlawfully" by a police officer) (citation omitted). Self-defense is not a defense to a 924(c) charge, and none of the defendants should be able to make such a claim to the jury. Similarly, defense counsel should be barred from using the term "self-defense" during trial.

###    G.   Potential Defense that Marijuana is Legal in the Commonwealth of Virginia or other States

Virginia Statute § 18.2-248 states:

 Manufacturing, selling, giving, distributing, or possessing with intent to
manufacture, sell, give, or distribute a controlled substance or an imitation controlled
substance prohibited; penalties

A. Except as authorized in the Drug Control Act (§ 54.1-3400 et seq.), it shall be
unlawful for any person to manufacture, sell, give, distribute, or possess with intent to
manufacture, sell, give or distribute a controlled substance or an imitation controlled
substance.

…

Va. Code Ann. § 18.2-248 (West)

Virginia Statute § 18.2-248.1 provides for the following penalties:
Penalties for sale, gift, distribution or possession with intent to sell, give or
distribute marijuana
Except as authorized in the Drug Control Act (§ 54.1-3400 et seq.), it is unlawful for any
person to sell, give, distribute or possess with intent to sell, give, or distribute marijuana.

(a) Any person who violates this section with respect to:
(1) Not more than one ounce of marijuana is guilty of a Class 1 misdemeanor;
(2) More than one ounce but not more than five pounds of marijuana is guilty of a Class 5
felony;
(3) More than five pounds of marijuana is guilty of a felony punishable by imprisonment
of not less than five nor more than 30 years.

There shall be a rebuttable presumption that a person who possesses no more than one
ounce of marijuana possesses it for personal use.

If such person proves that he gave, distributed, or possessed with intent to give or
distribute marijuana only as an accommodation to another individual and not with intent
to profit thereby from any consideration received or expected nor to induce the recipient
or intended recipient of the marijuana to use or become addicted to or dependent upon
such marijuana, he is guilty of a Class 1 misdemeanor.

(b) Any person who gives, distributes, or possesses marijuana as an accommodation and
not with intent to profit thereby, to an inmate of a state or local correctional facility, as
defined in § 53.1-1, or in the custody of an employee thereof is guilty of a Class 4 felony.

(c) Any person who manufactures marijuana, or possesses marijuana with the intent to
manufacture such substance, not for his own use is guilty of a felony punishable by

imprisonment of not less than five nor more than 30 years and a fine not to exceed $10,000.

(d) When a person is convicted of a third or subsequent felony offense under this section and it is alleged in the warrant, indictment or information that he has been before convicted of two or more felony offenses under this section or of substantially similar offenses in any other jurisdiction which offenses would be felonies if committed in the Commonwealth, and such prior convictions occurred before the date of the offense alleged in the warrant, indictment, or information, he shall be sentenced to imprisonment for life or for any period not less than five years, five years of which shall be a mandatory minimum term of imprisonment to be served consecutively with any other sentence and he shall be fined not more than $500,000.

Va. Code Ann. § 18.2-248.1 (West)

The government acknowledges that the legalization of marijuana is an issue that states throughout the country are considering. At the time of the CCE, distributing or possessing with the intent to distribute marijuana was illegal both federally and in the Commonwealth of Virginia. These laws remain unchanged today. Indeed, C. Conley was originally arrested and charged in Chesapeake, Virginia for this conduct. The government will submit a separate motion in limine asking this Court to bar the defense from making any argument that distributing or possessing with the intent to distribute marijuana was or is legal in Virginia or that any other states do currently permit this conduct. The government will further submit voir dire questions for the jury to ensure they will follow the Court's instructions that as a matter of law, the distribution or possession with the intent to distribute marijuana, is illegal.

### H.  Application of the Hearsay Rules

Several evidentiary issues that may arise during trial involve application of the hearsay rules.  The government previews these issues below.

### 1.    Statements of Defendants

The government will introduce statements made by defendants in different circumstances—on video recorded by Defendant C. Conley, in online advertisements via Telegram

and other application, statements to witnesses, and statements made via messaging applications. Such statements are admissions of a party opponent and are therefore excluded from the definition of hearsay under Federal Rule of Evidence 801(d)(2)(A).

### 2.      Statements in Furtherance of the Conspiracy

Many of the statements that the United States intends to introduce are statements by co-conspirators, both charged and uncharged, made during and in furtherance of the conspiracy. Under Federal Rule of Evidence 801(d)(2)(E), such statements – that is, statements offered against an opposing party, made by that party's co-conspirator during and in furtherance of the conspiracy – are excluded from the definition of hearsay.

In order to admit coconspirator statements under Rule 801(d)(2)(E), the government "must show that (i) a conspiracy did, in fact, exist, (ii) the declarant and the defendant were members of the conspiracy, and (iii) the statement was made in the course of, and in furtherance, of the conspiracy." *United States v. Graham*, 711 F.3d 445, 453 (4th Cir. 2013) (quoting *United States v. Pratt*, 239 F.3d 640, 643 (4th Cir. 2001)).  Each of these three factors "must be supported by a preponderance of the evidence." *Id.* (citing *United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992)).  In support of the admission of coconspirator statements, the government will introduce evidence sufficient to support a finding as to each of the three necessary factors.

The contents of the declaration, together with independent evidence, may constitute sufficient proof of the existence of the conspiracy and the involvement of the defendant and declarant in it. *Bourjaily*, 483 U.S. at 181; *United States v. Neal*, 78 F.3d 901, 904-05 (4h Cir. 1996).  Once a conspiracy has been shown, the government need only present slight evidence connecting a defendant to the conspiracy in order to introduce an appropriate co-conspirator declaration against the defendant. *Neal*, 78 F.3d at 905.  Further, declarations of an unindicted co-

conspirator made in furtherance of the conspiracy may be used against a charged conspirator. *United States v. Nixon*, 418 U.S. 683, 701 (1974).

Importantly, the Fourth Circuit has stated that "[a] statement by a co-conspirator is made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." *United States v. Smith*, 441 F.3d 254, 262 (4th Cir. 2006) (quoting *United States v. Shores*, 33 F.3d 438, 443 (4th Cir. 1994)).  In addition, the Fourth Circuit has construed the requirement that the proffered statements be made in support of the conspiracy "so broadly that even casual relationships to the conspiracy suffice to satisfy the exception."  *Id.* (quoting 5 Weinstein's Federal Evidence §§ 801.34[5], 801-89).  The government will meet this standard.

### 3.     Statements Not Offered for the Truth of the Matter Asserted

Testimony is not hearsay when it is not offered to prove the truth of the matter asserted. *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir. 1985).  Statements which provide necessary background information, but are not offered for the truth of the matter asserted, are admissible under Federal Rule of Evidence 801(c).  *Id.* (statements offered for the limited purpose of explaining why a government investigation was undertaken are not hearsay).  Out-of-court statements offered for the limited purpose of explaining why a testifying witness did something is not hearsay. *United States v. Calderon*, 554 F. App'x 143, 154 (4h Cir. 2014) (per curiam) (unpublished).

Among others, the government will offer certain out of court statements to show why law enforcement responded to the Wintercress shootout on May 13, 2022. These statements are not offered for their truth, but merely to show why a law enforcement officer embarked on a course of action.  Without these background statements, the jury will be left to guess and speculate as to why

or how a witness chose a random course of action.  Consequently, this testimony is neither hearsay nor unfairly prejudicial.

## V.        __CONCLUSION__

As discussed herein and in its previous filings, the evidence will show that C. Conley led a CCE, and managed the defendants Reed, Alexander, and Speller, who conspired together to traffic marijuana and psilocybin while armed, and were willing to violently defend their drugs and drug proceeds, with deadly force if necessary, from would-be robbers.


Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By:    /s/_____
Megan M. Montoya
Assistant United States Attorney
Madison Albrecht
Third Year Law Student, William & Mary Law School
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number: 757-441-6631
Facsimile Number: 757-441-6689
E-Mail: megan.montoya@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th day of September 2023, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to all counsel of record.


                                          /s/
                                      Megan M. Montoya
                                      Assistant United States Attorney
                                      United States Attorney's Office
                                      101 West Main Street, Suite 8000
                                      Norfolk, Virginia 23510
                                      Phone: (757) 441-6331
                                      Facsimile: (757) 441-6689
                                      Email: megan.montoya@usdoj.gov