IN THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | CASE NO.:  2:22cr147 |
| | ) | |
| CORTNEY ALLEN CONLEY, | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENSE POSITION WITH RESPECT TO SENTENCING FACTORS

COMES NOW the defendant, Cortney Allen Conley, by undersigned counsels, Jarrett L. McCormack and Robert W. Canoy, and in accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements and this Court's Sentencing Procedure Order regarding guidelines sentencing, the defense hereby represents that it has received and reviewed the presentencing report (PSR) and Addendum thereto prepared by the United States Probation Officer.

## UNRESOLVED OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT AND ADDENDUM THERETO

The defense maintains the objection to the Presentence Investigation Report, pages 11 and 13, § 27, §37, and §39: Reference to the quantity of marijuana which was based solely off of co-conspirator estimates and shipping records.  Mr. Conley submits that there was no testimony deduced at trial which established that every item shipped to any of the reference locations was marijuana, nor was there testimony or evidence as to the actual (not suspected) contents of the packages which constitute the calculated drug weight.

## <u>REQUEST TO VACATE CONVICTIONS FOR UNDERLYING CCE OFFENSES</u>

Mr. Conley was indicted and convicted of a Continuing Criminal Enterprise (CCE) offense (Count 8) as well as several predicate offenses of the CCE (Counts 1,2,3,5, and 6). The substantive underlying offenses which the Government charged as the enumerated predicate offenses for the CCE were named in Count 8 of the indictment. The predicate offenses for the CCE were named in the indictment as "including but not limited to" counts 2, 3, 5, and 6. ECF 389. As indicted, the conspiracy offense in count 1 became a lesser included offense and an offense charged for contingencies of proof.

In the Fourth Circuit and numerous other federal circuits, vacating the underlying predicate offenses is proper when there is a CCE conviction. In *United States v. Wilson*, the Fourth Circuit instructed the lower court to vacate Wilson's predicate offense conviction when he was convicted of a CCE. 135 F.3d 291, 303 (4th Cir. 1998) ("conspiracy to possess with intent to distribute crack must be vacated because the conspiracy was expressly alleged and proved as a predicate offense for his CCE conviction."). Therefore, under *Wilson*, the Court must vacate the enumerated predicate offenses for the CCE.

Looking at the conspiracy charge in count 1, two different legal rationales support vacating this conviction. First, while count 1 is not expressly alleged as a predicate offense, inclusion of the language "including but not limited to" when naming the predicate offenses in the CCE indictment is sufficiently broad to incorporate the conspiracy charge as a predicate offense. This is also consistent with how the Government proved its case at trial. There were no separate criminal conspiracies alleged and proved outside of those which the Government argued were all part of the CCE.

Second, the Supreme Court has held that conspiracy is a lesser included offense of a CCE charge, even when the conspiracy is not alleged as an enumerated predicate offense of the CCE.

2

In *Rutledge v. United States*, the defendant was charged with CCE and conspiracy. 517 U.S. 292, 295 (1996). The predicate drug offenses alleged for the CCE were a series of cocaine distribution offenses. *Id*. Like the case at hand, in *Rutledge*, a separate count of conspiracy was also charged in addition to the CCE, and the conspiracy was not expressly alleged as a predicate offense of the CCE. *Id*. The jury in *Rutledge* found the defendant guilty of both the CCE count and the conspiracy count. The Supreme Court analyzed this situation and began its opinion by noting that at that time there was a circuit split regarding what relief the defendant was entitled when convicted of both a CCE and conspiracy. *Id*. at 296. At that time, circuits were handling that situation by either vacating the conspiracy conviction, allowing a sentence only for the CCE, or allowing a sentence for both but requiring them to be run concurrent to each other. *Id*. at 296-297. The Supreme Court resolved the circuit split in *Rutledge* by holding that conspiracy is a lesser included offense of a CCE and only one conviction may stand. *Id*. at 307. As such, the Supreme Court held that either the conspiracy or the CCE must be vacated, both cannot stand. *Id*.

In the case at hand, faced with the *Rutledge* rule that both the conspiracy and CCE convictions cannot stand, it is presumed that the Government will request to maintain the more severe CCE offense, and consent to vacating the conspiracy conviction. Similarly, under *Wilson* and other authority, the Court should also vacate the enumerated predicate offenses for the CCE, namely counts 2, 3, 5, and 6. As such, the Defense respectfully requests that the Court vacate Mr. Conley's convictions for counts 1, 2, 3, 5, and 6.

## APPLICATION OF THE 18 U.S.C. §3553(a) SENTENCING FACTORS AND ARGUMENT IN SUPPORT OF VARIANCE

Pursuant to 18 U.S.C. §3553(a), the sentencing court is directed to impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals set forth by Congress, including the

imposition of a just punishment.  In determining the minimally adequate sentence, §3553 also directs the court to consider, among other factors:

    (1)  The specific nature and circumstances of the offense,

    (2)  The unique history and characteristics of the defendant,

    (3)  The need to foster deterrence and promote respect for the law,

    (4)  The need to protect the public from further crime,

    (5)  The need to address any educational, vocational, medical, or therapeutic concerns with respect to the individual defendant, and

    (6)  The kinds of sentences available, including the ranges and category of offense.

In assessing these factors, the statute further requires that the court consider the applicable sentencing guidelines.  The court, however, "may not presume that the Guidelines range is reasonable," and instead "must make an individualized assessment based on the facts presented." Gall v. United States, 128 S. Ct. 586, 597 (2007), see also Rita v. United States, 551 U.S. 338, 351 (2007) ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").  The sentencing guidelines are merely "a rough approximation of sentences that might achieve §3553(a)'s objectives."  Rita, 551 U.S. at 350.

Fashioning a just sentence cannot be reduced to a mere arithmetical exercise. Reliance solely on numbers, quantities, offense levels, criminal history categories and matrixes produces an illusory precision that obscures the fact that sentencing, in the end, must involve the exercise of judgement, i.e. a judge's discerning opinion that results from identifying and weighing fairly all of the factors relevant to achieving the statutory sentencing goals.  See *United States v. Biheiri*, 356 F. Supp. 2d 589 (E.D.Va 2005).

4

The Sentencing Guidelines as calculated by the Probation officer denote a guideline range of 292 to 365 months, plus 180 months consecutive.

As the arguments below bear out, Mr. Conley, by counsel, respectfully submits that the appropriate sentence in this matter is the mandatory minimum sentence of thirty-five (35) years (420 months) imprisonment.  Counsel for Mr. Conley submits that said proposed sentence is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. §3553(a).

### NATURE and CIRCUMSTANCES of the OFFENSE

Mr. Conley was convicted by a jury of one (1) count of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances of Marijuana, Psilocyn, and Psilocybin in violation of 21 U.S.C. §841; two (2) counts of Possession with Intent to Distribute Marijuana in violation of 21 U.S.C. §841; two (2) counts of Possession with Intent to Distribute Psilocyn and Psilocybin in violation of 21 U.S.C. §841; two (2) counts of Use or Carry a Firearm During and in Relation to, or Possession of a Firearm in Furtherance of, Drug Trafficking Crimes in violation of 18 U.S.C. §924; and one (1) count of Continuing Criminal Enterprise in violation of 21 U.S.C. §848.

Counsel wishes to begin the assessment of the nature and circumstances of the offense by acknowledging the seriousness of the convicted offenses, and notes that, while the below is intended to highlight important contextual facts about the circumstances of the offenses for mitigation purposes, it does not intend to minimize the gravity of the situation or the loss of human life.

The offenses which Mr. Conley was convicted of, while very serious, centered around allegations that he and several co-conspirators engaged in a relatively brief period of sales of

marijuana and psilocyn/psilocybin, beginning in or about January 2020 until Mr. Conley's apprehension on November 8, 2022. There were no allegations that Mr. Conley was ever engaged in the sale or distribution of any "hard" drugs, such as heroin, cocaine, methamphetamine, fentanyl, or LSD. Further, and fortunately, this case does not involve a situation all too familiar to the Court in federal drug cases: overdoses by purchasers of the products. Additionally, the geographic reach of the charged narcotic transactions was limited in breadth, only extending through a small part of South Hampton Roads. This was not a large-scale and broadly geographic distribution operation, neither extending to other portions of Hampton Roads nor beyond, such as the Mid-Atlantic region. Finally, it is notable that the entirety of the sales were made to the end-level consumers on a personal-use basis. This was not a situation in which Mr. Conley or his co-defendants were high-level wholesale distributors, such as the individuals from whom product was purchased on the west coast.

While the Government focused much of its attention at trial and in its position paper on the fatal shooting during the attempted armed robbery of the Wintercress Way apartment, those specific circumstances should also be considered in context. Mr. Conley and others were in the apartment when two armed masked men made forcible entry into the apartment, with their weapons extended and ready to fire. Mr. Conley and his codefendant Rashaun Johnson, stuck inside a small apartment with no rear doorway or additional rooms to flee, returned fire. Mr. Conley stopped firing his weapon once the individuals were on the ground. While he then picked up a shotgun, he did not discharge that weapon. Further, it was not Mr. Conley that proceeded to pistol whip one of the intruders, it was his codefendant Davian Jenkins, done of his own accord and not at the direction of Mr. Conley.

6

While the Court has likely been confronted with CCE and other cases involving the same § 924(c) charges as are found here, the circumstances are likely often different.  The facts of the instant case involve a shooting where Mr. Conley and others were being victimized and responded. What is not present in this case is crucially distinguishable from many § 924(c) situations: this was not a case of any of the co-defendants robbing anyone else.  They were not breaking into others' homes or "pop-ups" while armed and with criminal intent to do those inside harm.  The specific weapons recovered from or attributed to Mr. Conley were notably not recovered in places such as the weapons recovered from a cooperating co-defendant, Amadeo Classen, whose tactical shotgun and loaded handgun were recovered from his minor daughters' bedrooms.

Defense counsel finds it regrettable that the Government even now, six months post-trial, in its position paper takes the continued position that Mr. Conley "Execut(ed) two men to protect his drugs and money."  ECF 562, p. 7.  While counsel understands and respects the Court's pretrial ruling regarding self-defense, and will adhere to the ruling in its position paper and at sentencing, it is incomprehensible that the Government continues its assertion that this situation amounted to an "execution."  Under no circumstances did Mr. Conley execute these individuals, which infers an intentional and premeditated, planned action.  The word has been defined by numerous dictionaries, with the relevant definition being "To put to death, esp. by legal sentence <Johnson was executed shortly after midnight>"  *Execute*, BLACK'S LAW DICTIONARY (8th ed. 2004).

Cortney Conley absolutely regrets the loss of life at the apartment that day, as testimony from trial reflected his emotion after the fact.  While he did not know at the time, when he learned of the bullets entering the apartment across the hallway, he was and remains extremely remorseful and is thankful that no one was inside at the time.

## DEFENDANT'S HISTORY and CHARACTERISTICS: 18 U.S.C. § 3553 (a)(1)

Cortney Allen Conley is 36 years of age and a resident of Virginia Beach, Virginia.  He was incarcerated in state custody from November 8, 2022 and transferred to Federal custody on December 22, 2022 following his arraignment for the first indictment.  As stated in the presentencing report Cortney was born of Kenneth Fountain and Forestine T. Perry.  Mr. Fountain is a retired heavy machine mechanic and was only involved in Cortney's life until he was 15 years old and currently lives in San Diego, California.  Ms. Perry is a resident of Virginia Beach and works at the Virginia Beach Alternative School in their administration office.  Ms. Perry has had a gambling problem all of her life and subsequently had negatively impacted Cortney's credit before he turned 18.  Floyd H. Conley is the man Cortney Conley identifies as his father.  Floyd Conley was the head coach of the Norfolk State University track team and passed away from blood clots in 2004 at the age of 58, which took a heavy toll on Cortney.  Ms. Perry and Floyd Conley were in a relationship for 22 years prior to his death.  Cortney has one adopted brother, Michael Conley who is a Pastor in Virginia Beach and he has three maternal siblings.  As reported his maternal siblings are Alejandro Reed who works for Pepsi and resides in Baltimore, Maryland, Charles Perry who owns a bakery in Chesapeake, Virginia with his two children and Connell Conley, who works for Verizon and is married with three children.  Cortney also reported having two half siblings from his biological father: Shakira Fountain who resides in Monterey, California and Danikah Fountain who resides in Georgia.

Cortney first married Alicia Urbas in 2009 and divorced between 2010 and 2012 and two children resulted from that marriage, who are currently ages 15 and 13.  Cortney financially supported his children but was not a personally active participant in their lives because they live in Germany.  Due to his current incarceration, he has been unable to have contact with these children.

8

In 2017 Cortney married Lateya Conley, a codefendant in this matter.  Two children have resulted from this union ages 9 and 12, as well as Mrs. Conley bringing a child from a previous relationship that is 17 years old, all of which live in Virginia Beach.  Cortney also has a 2-year-old child with Jasmine Cuffee, also a codefendant in this matter and a 1-year-old following a relationship with Keshawn Ellis.  Cortney has signed over his parental rights of his child with Ms. Ellis.

Cortney was born and raised in Virginia.  When he entered the United States Army in 2007 he left Virginia and attended basic training in South Carolina.  Upon completion of basic training he was stationed in Grafenwohr, Germany until his discharge in 2010.  From 2008 to 2009, Cortney was deployed to Iraq.  Upon returning to the United States, he returned to the Hampton Roads area and has resided in Chesapeake and Virginia Beach.

The military service of Cortney Conley, which includes deployment to a war zone in Iraq, is a significant mitigating factor recognized by the United States Supreme Court, as well as the United States Sentencing Commission and Sentencing Guidelines.  The Supreme Court has observed that the nation has "a long tradition of according leniency to veterans in recognition of their service, especially for those who fought on the front lines."[1]  United States Circuit Judge Michael Daly Hawkins has written "There is widespread public acceptance of the notion that military veterans should be treated differently in many respects from their civilian counterparts. This acceptance may be attributable to a general respect for the sacrifice of members of an all-volunteer force and the knowledge that today's veteran may have been subjected, even repeatedly subjected, to life threatening events the general public may never know."[2]

---

[1] Porter v McCollum, 558 U.S. 30, 43-44 (2009) (per curiam).
[2] Michael Daly Hawkins, Coming Home: Accommodating the Special Needs of Military Veterans to the Criminal Justice System, 7 OHIO STATE J. CRIM L. 563, 569 (2010).

It is well recognized in consideration of the sentencing factors under 18 U.S.C. §3553 that family ties "are pertinent to crafting an appropriate sentence." *United States v. Nellum,* No. 2:04-CR-30, 2005 BL 88941, at *4 (N.D. Ind. Feb. 3, 2005).  As reflected in the attached character letters, Cortney has an extremely close bond with his children, other family and friends.  Cortney is faced with the proposition that, due to the mandatory minimums he faces, by the time he will be eligible for release from incarceration, all of his children will be middle-aged adults with their own families and responsibilities.  This knowledge has and will continue to weigh a heavy toll on him and his family in the years to come

In 2009 while in the military Cortney was diagnosed with post-traumatic stress disorder (PTSD) and subsequently in 2010 was diagnosed with anxiety.  While the anxiety was diagnosed while he was in the military Cortney believes that he had it since he was a child and it had just been undiagnosed.  Cortney has received mental health treatment through the Veteran's Administration where he was seen for depression and was prescribed citalopram.  Cortney does believe he would benefit from additional mental health treatment and therapy.  Prior to Cortney's arrest he was waiting to see a mental health provider at the VA and because he was unable to get faster mental health treatment he started self-medicating with another person's Xanex.  Cortney also started self-medicating with mushrooms in approximately 2021 to assist him with his PTSD.

In Cortney Conley's youth he started to consume alcohol at the age of 16 and first used marijuana at the age of 14.  At one point Cortney was smoking up to 12 marijuana cigarettes but prior to the instant offense he was only smoking up to 5 marijuana cigarettes per day.

Cortney completed the 9th grade at Green Run High School in Virginia Beach and received his General Education Development (GED) diploma in 2007 from the Adult Learning Center in Virginia Beach.  Between 2011 until 2014 Cortney attended Tidewater Community College (TCC)

although he did not obtain a degree.  In the time between obtaining his GED and attending TCC Cortney was enlisted in the Army between 2007 and 2010.  While enlisted he received the Iraq Campaign Medal with two Campaign Stars; Army Commendation Medal; Army Achievement Medal; Meritorious Unit Commendation; National Defense Service Medal; Global War on Terrorism Service Medal; Army Service Ribbon; Overseas Service Ribbon; Driver and Mechanic Badge with Driver Wheeled Vehicles and Served in a Designated Imminent Danger Pay Area. Between 2011 through 2014 he worked at his maternal brother's bread company on and off earning between $300 and $800 weekly.

## THE NEED to ADDRESS ANY EDUCATIONAL, VOCATIONAL, MEDICAL, or THERAPEUTIC CONCERNS

Mr. Conley has spent the last two years in various jails awaiting trial and sentencing in this matter.  He has been unable to speak to his wife, have contact with his children and has missed assisting with his family obligations.  Mr. Conley has had to deal independently with the decisions he has made and has been unable to receive consistent therapeutic counseling to address any issues the stress of the situation and the prior PTSD diagnosis has caused him.  Mr. Conley had been unable to further his education with an advanced degree, and he wishes to continue that track so that he can provide for his family upon his release.  Cortney looks forward to taking advantage of any and all substance abuse and mental health treatment resources made available to him, as well as pursuing educational and career-based training offered by the Bureau of Prisons.

## THE NEED to PROMOTE DETERRENCE and the NEED to PROTECT the PUBLIC FROM FURTHER CRIME

The issue of specific deterrence is a sentencing factor for consideration under 18 U.S.C. § 3553 (a)(2)(C).  The empirical evidence shows that there is no relationship between sentence

11

length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels reached that conclusion, as has every major survey of the evidence."); David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year timeframe").

The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level. . . . While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal*

*Sentencing Guidelines*, at 15 (2004) ["U.S. Sent'g Comm'n, *Measuring Recidivism*"]. *See also* Part IV.A.3, *infra*.

Mr. Conley faces a mandatory minimum sentence of 35 years incarceration, and will be nearly 70 years old upon his release, at a minimum.  This Court has already entered a Forfeiture Order against Mr. Conley in the amount of $780,547.65, and he faces significant additional financial penalties in terms of the costs of his incarceration as well as fines and assessments.  There can be no doubt that even the mandatory minimum sentence, combined with the severity of the financial penalties and period of supervised release, will serve as more than adequate specific deterrence to Cortney to dissuade him from any criminal activity upon his release.

As to the matter of general deterrence, the Government will undoubtedly issue a press release on the day that Mr. Conley is sentenced, detailing the offense and punishment imposed. The deterrence to the general public based upon the news articles thereafter generated will be great – a veteran with no criminal record sentenced to at least 35 years in prison for the distribution of marijuana and magic mushrooms, and related conduct.

The public will be protected from further crime related to Mr. Conley for at least the next 35 years, and he will be elderly upon his release from incarceration.

## ABILITY TO PAY FINES

The factors under 18 U.S.C. §3572, considered in determining the amount of fines, include among other things, the defendant's income, earning capacity, and financial resources, the burden that the fine will impose upon the defendant and any dependent, whether restitution is ordered or made and the amount of such restitution, and the expected costs to the government of any imprisonment or term of supervised release.   As reflected in the Presentence Investigation Report, Mr. Conley has a negative net worth, limited-to-no liquid assets, an obligation to support several

minor children and a significant Forfeiture Order he is obligated to.  Counsel further respectfully requests the Court consider the defendant's future earning ability, and his ability to pay in the future.  His conviction in this matter, together with the mandatory minimum sentence of 35 years will effectively eliminate many employment opportunities after release from incarceration.  Upon his release from prison, he will have to take a giant step into a new career path – starting at the age many of us hope to retire at. The Defense according respectfully request the Court to find that Mr. Conley is indigent for purposes of ability to pay applicable fines.

## THE KINDS of SENTENCES AVAILABLE and the NEED to AVOID UNWANTED SENTENCING DISPARITIES

As indicated *supra*, Mr. Conley faces a mandatory minimum period of incarceration of 35 years, a not insignificant amount of imprisonment.  Although there were eleven other convicted codefendants in this case, only four have been sentenced at the time of the submission of this position paper, all of whom had entered guilty pleas to various charges.  Corey Melic Blackwell was sentenced to 156 months imprisonment on a Conspiracy count.  Lateya Conley, Cortney's wife, was sentenced to 36 months on a Money Laundering count.  Aaron Hunter received a sentence of 120 months on multiple counts.  Lastly, and notably, Jeron D'Nell Cephus, after being free on bond for the majority of the pendency of trial, was sentenced to just 42 months incarceration, despite evidence at trial that he was similarly engaged in large-scale drug purchases and distribution.

## SUMMATION

The Defendant, Cortney Allen Conley, is before this Honorable Court for determination as to an appropriate sentence for the offense of one (1) count of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances of Marijuana, Psilocyn, and Psilocybin in

violation of 21 U.S.C. §841; two (2) counts of Possession with Intent to Distribute Marijuana in violation of 21 U.S.C. §841; two (2) counts of Possession with Intent to Distribute Psilocyn and Psilocybin in violation of 21 U.S.C. §841; two (2) counts of Use or Carry a Firearm During and in Relation to, or Possession of a Firearm in Furtherance of, Drug Trafficking Crimes in violation of 18 U.S.C. §924; and one (1) count of Continuing Criminal Enterprise in violation of 21 U.S.C. §848.

The Defense specifically requests the Court to take the action requested herein, vacating the appropriate underlying drug-related counts.

While the Defense is cognizant of the applicable sentencing guideline range of 292 to 365 months plus 180 consecutive months, it is respectfully submitted that based upon the history and characteristics of Mr. Conley, an appropriate sentence for Cortney Conley, taking into account all of the applicable sentencing factors, is the mandatory minimum sentence of 35 years (420 months) months.   It is submitted that said proposed sentence is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. §3553(a)(2).

Attached to this position paper are documents that counsel for the defendant respectfully requests be considered by the Honorable Court on behalf of Mr. Conley, as follows:

## I.   Character Support Letters:

    A.  Letter from Kelly-Ann Evans
    B.  Letter from Warren Salvodon
    C.  Letter from Shakira Fountain
    D.  Letter from Belinda Jones
    E.  Letter from Octavis Jones
    F.  Letter from Geneth Jones
    G.  Letter from Forestine Perry

## II.   Photographs

**CORTNEY ALLEN CONLEY**


By _____/s/_____
        Of Counsel



_____/s/_____
Jarrett L. McCormack, Esq.
Virginia State Bar No. 80675
Attorney for Cortney Allen Conley
McCormack & McCormack
Attorneys at Law
641 Lynnhaven Parkway, Suite 201
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
jlm@mccormackpc.com


_____/s/_____
Robert W. Canoy, Esq.
Virginia State Bar No. 98956
Attorney for Cortney Allen Conley
McCormack & McCormack
Attorneys at Law
641 Lynnhaven Parkway, Suite 201
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
rcanoy@mccormackpc.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of October, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Megan Montoya, Esquire
Assistant United States Attorney
United States Attorney's Office

101 West Main Street, Suite 8000
Norfolk, Virginia 23510
757-441-6331 phone
757-441-6689 fax


                                    _____/s/_____
Jarrett L. McCormack, Esq.
Virginia State Bar No. 80675
Attorney for Cortney Allen Conley
McCormack & McCormack
Attorneys at Law
641 Lynnhaven Parkway, Suite 201
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
jlm@mccormackpc.com


                                    _____/s/_____
Robert W. Canoy, Esq.
Virginia State Bar No. 98956
Attorney for Cortney Allen Conley
McCormack & McCormack
Attorneys at Law
641 Lynnhaven Parkway, Suite 201
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
rcanoy@mccormackpc.com


      I further certify that on this 18th day of October, 2024 I caused a true and correct copy of the foregoing Position of the Defendant with Respect to Sentencing Factors to be e-mailed to the following:

Nicole Pender
United States Probation Officer
600 Granby Street
Suite 200
Norfolk, Virginia 23510
Phone: 757-222-7308

_____/s/_____
Jarrett L. McCormack, Esq.
Virginia State Bar No. 80675
Attorney for Cortney Allen Conley
McCormack & McCormack
Attorneys at Law
641 Lynnhaven Parkway, Suite 201
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
jlm@mccormackpc.com

_____/s/_____
Robert W. Canoy, Esq.
Virginia State Bar No. 98956
Attorney for Cortney Allen Conley
McCormack & McCormack
Attorneys at Law
641 Lynnhaven Parkway, Suite 201
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
rcanoy@mccormackpc.com

18