IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 2:22CR147-03 |
| v. ) | |
| ) | |
| DAVIAN MARCELIS JENKINS, ) | |
| a/k/a "DJ" ) | |
| Defendant. ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, Megan M. Montoya, Assistant United States Attorney, hereby submits its position with respect to the defendant's sentencing factors. In the Presentence Investigation Report (PSR) prepared in this matter, the United States Probation Office determined the applicable guideline sentence to be 60 months' imprisonment, plus 7 years' imprisonment, based on a total offense level 23 and a criminal history category I.

In accordance with Section 6A1.2 of the Sentencing Guidelines Manual and this Court's policy regarding sentencing, the United States represents that it has reviewed the PSR and ha s no objections.

For the reasons outlined below, the United States respectfully submits that a sentence within this advisory guideline range, as finally calculated by all of the filings, would fulfill the purposes set forth in 18 U.S.C. § 3553(a).

**I.    Background**

Davian Marcelis Jenkins, a/k/a "DJ," Cortney Allen Conley, a/k/a "KO," Rashaun Marcquez Johnson, a/k/a "Shaun," Lateya Conley, a/k/a "Teya," Jasmine Deneen Cuffee, a/k/a "Jas," Javaid Akhtar Reed, a/k/a "Vay," Kyron Speller, a/k/a "Spazz," Terrance Spencer

Alexander, a/k/a "T-Money," Corey Melic Blackwell, a/k/a "Blick," and Aaron Hunter, a/k/a "ASAP," are named in a 18-count Superseding Indictment returned by an Eastern District of Virginia, Norfolk Division Grand Jury on April 19, 2023. Count One charges Jenkins with Conspiracy to Distribute and Possess with Intent to Distribute Marijuana and Psilocybin, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B), from no later than January 2020 continuing up to and including November 8, 2022.  Count Two charges him with Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), on or about May 13, 2022. Count Three charges Jenkins with Possession with Intent to Distribute Psilocybin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), on or about May 13, 2022. Count Four charges the defendant with Possession, Brandish, and Discharge of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A) and 2, on or about May 13, 2022.

On July 20, 2023, in accordance with the terms of a written Plea Agreement, the defendant appeared before The Honorable Douglas E. Miller, and pled guilty to Counts One, Three, and Four of the Superseding Indictment. Sentencing was continued pending the completion of a Presentence Investigation Report.

**II.**     **<u>Motion for Acceptance of Responsibility</u>**

The United States moves this Court, pursuant to U.S.S.G. § 3E1.1(a) and (b), to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant assisted authorities in the investigation and prosecution of his own misconduct by timely notifying the United States of her intention to enter a plea of guilty, thereby allowing the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

### III.     Standards Governing Sentencing

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision. *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 552 U.S. 85 (2007), emphasizing that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." *Id.* at 90. Finally, in *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the Sentencing Guideline range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 49-50. The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one.").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

**IV.    Position on Sentencing and Argument**

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, (3) the need for the sentence imposed to promote the goals of sentencing, (4) the kinds of sentences available, (5) the sentencing guideline range, (6) any pertinent policy statement issued by the Sentencing Commission, (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (8) the need to provide restitution to any victims of the offense.  For the reasons that follow, the government respectfully submits that a guideline sentence is appropriate and reasonable in light of the Section 3553(a) factors.

    A.    Nature and Circumstances of the Offense

The nature and circumstances of this case are incredibly serious. The charges in this case stem from an ongoing psilocyn, psilocybin and marijuana trafficking conspiracy, which culminated in a shootout and double homicide on May 13, 2022, in Chesapeake, Virginia. During the conspiracy, the defendants and co-conspirators established makeshift "popup" marijuana, psilocyn, and psilocybin dispensaries at various locations throughout Hampton Roads, including at an apartment on Wintercress Way in Chesapeake, Virginia. The defendants and coconspirators would change locations of the "popup" dispensaries to avoid detection by law enforcement and to avoid attempted robberies of drugs and drug proceeds. Defendant Cortney Conley ("C. Conley") set up multiple Ring cameras as the Wintercress Way "popup" to onitor the "popup."  Although as a shop worker the defendant was one of the lower-level members of this conspiracy, he played a critical role by working as security and selling controlled substances for defendant C. Conley.

The investigation in this case began on May 13, 2022, when defendant C. Conley and defendant Rashaun Johnson ("Johnson") engaged in a shootout with two subjects who attempted to rob the conspiracy's "popup" shop at The Streets of Greenbrier luxury apartment complex on Wintercress Way in Chesapeake, Virginia. At approximately 3:50 p.m. on May 13, 2022, two armed subjects wearing ski masks displayed handguns and forced their way into the Wintercress Way "popup" dispensary. As the two subjects entered the residence, they were met with armed resistance from defendants Johnson and C. Conley. Defendant C. Conley was armed with a .45 caliber handgun which he brandished and discharged at the two subjects. Defendant Johnson was armed with a Glock 9mm semi-automatic pistol, which he brandished and discharged at the two subjects. A hail of gunfire was exchanged with rounds entering neighboring residences. One of the subjects fell dying in the foyer of the residence and the second subject was repeatedly shot with a large caliber handgun multiple times, immobilizing his arms as he attempted to reach for the door handle to flee the residence. Both subjects were left to die in the foyer blocking the front door of the apartment. Defendant Davian Jenkins ("Jenkins") took a firearm from one of the subjects and brandished and pistol whipped one of the subjects as he lay dying in the foyer. Immediately after the gun battle, defendants C. Conley and Jenkins packed the controlled substances, drug proceeds, and firearms into large duffle bags and fled the apartment through a window in a room at the back of the residence. Defendant Johnson fled through a separate window. Jenkins fled with C. Conley, who later sent Jenkins back to get cameras from the residence. Ring camera footage captured Jenkins removing the front door camera.

Officers did not respond until later that day, after about 5:30 p.m., when a property manager of the apartment complex noticed bullet holes in the apartment complex hallway and called 911. Patrol officers responded and attempted to gain entry to the front door after being provided a key

5

by management. The key provided by management did not work because someone had changed the lock on the apartment door. The officers observed two decedents suffering from gunshot wounds through an open back window that had a screen that had been removed from the window. The officers made exigency entry into the apartment and determined that the two decedents had suffered from gunshot wounds. After the patrol officers determined that the two subjects were deceased, they exited the apartment and secured the scene. They also contacted homicide and robbery detectives, who obtained a state search warranted and reentered the apartment.

The one-bedroom apartment where the shootout occurred was set up for the distribution of controlled substances, contained folding tables displaying various strains of high-grade marijuana labeled by strain name and quantity pricing (multiple pounds), psilocybin (pounds), Xanax pills in jars, thousands of custom packaging materials, a digital scale, edibles, and THC-infused candy, and did not have a bed or bedding inside. Investigators also located a Square iPad credit card scanner, a commercial money counter, multiple label makers, Cash App handles with URL codes, a secure cash drop box, and a dry erase board listing the day of the day.

On July 26, 2022, a search warrant was executed at the apartment located on Belaire in Chesapeake, Virginia, which was leased by Jenkins. The search at this apartment revealed electronics, scales, an iPhone, a pair of black sweatpants that matched the video evidence from the attempted robbery and homicide on Wintercress Way, 9mm ammunition, marijuana seeds, and a thumb drive. Jenkins was not home during the execution of the search warrant.

Jenkins was arrested on July 27, 2022, without incident. A search of Jenkins after arrest revealed he was in possession of the search warrant execution documents served the day before, a cellular telephone and small amounts of marijuana. Furthermore, a K-9 narcotics detection officer was called to the scene and conducted a free air sniff of Jenkins' vehicle, which alerted positive.

A search of Jenkins' vehicle was conducted which revealed, new clothing and an overnight bag, which included the under garment that matched the boxers viewed on surveillance video from the Wintercress Way shooting. In addition, the agents located a laptop computer, camera equipment, digital hard drive and paperwork for hotel parking in Ocean City Maryland from July 26, 2022. Jenkins exercised his legal rights and did not provide a statement to agents. The government appreciates that Jenkins did not make up a false statement at the time of his arrest, unlike some of his coconspirators.

The defendant was a lower-level shop worker for his cousin, C. Conley. He would be sent out on errands for the conspiracy and acted as security for the CCE. He did not act in a leadership capacity and is attributed with 198 kilograms of marijuana and 176 grams of psilocybin. The defendant's conduct warrants a sentence within the advisory guideline range.

      B.      <u>History and Characteristics of the Defendant</u>

The defendant is a 27-year-old male with a minimal criminal history, consisting of a single conviction for reckless driving in 2022. The United States submits that it is unusual for a defendant in a federal drug conspiracy to have such a limited criminal history, and this factor weighs in the defendant's favor.

The defendant was born in Suffolk, Virginia, raised primarily by his mother. PSR ¶ 70. His father was largely absent throughout his childhood and adult life. *Id*. The defendant experienced abuse from an ex-girlfriend in the past. PSR ¶ 71. During his military career, he was stationed and resided in Fayetteville, North Carolina for two years, Fort Jackson, South Carolina, for six months, and Fort Lee, Virginia, for a training detachment. ¶

Significantly, the defendant was a victim of a shooting in 2018, and sustained injuries to his head, buttocks, and his left knee. PSR ¶ 78. The defendant has multiple bullets in his buttock,

head, and knee from the shooting. The defendant has also been diagnosed with PTSD, anger issues, depression, and anxiety. PSR ¶ 80. The United States submits that mental health treatment and anger management are particularly important for this defendant.

    C.    <u>Other Factors to be Considered Under 18 U.S.C. § 3553(a)</u>

Among the other factors a sentencing court is to consider under Section 3553(a), the United States would highlight the need for the sentence imposed in this case to reflect the seriousness of the defendant's offense, afford adequate deterrence to future criminal conduct, and the need to avoid unwarranted disparities.

In this case, general deterrence is particularly important. As evidenced here, trafficking in marijuana and psilocybin is not harmless. Indeed, any involvement in the drug trade is dangerous and can result in brutal violence and loss of life. The defendant's sentence should reflect the need to deter others from engaging in similarly dangerous drug activity.

**VI.**    **<u>Conclusion</u>**

While the defendant has a limited criminal history and was not a leader in this conspiracy, his role in this widespread and ultimately fatal drug trafficking conspiracy cannot be ignored. The United States respectfully submits that a sentence within the advisory guideline range is sufficient, but not greater than necessary, to fulfill the purposes of Section 3553(a), and asks the Court to impose the same.

                        Respectfully submitted,

                        Jessica D. Aber
                        United States Attorney

By:          /s/
                Megan M. Montoya
                Assistant United States Attorney

Attorney for the United States
United States Attorney's Office
101 W. Main St., Suite 800
Norfolk, VA 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-3205
E-Mail Address: <u>Megan.Montoya@usdoj.gov</u>